# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

SHIRLEY JN JOHNSON,

      Plaintiff,

v.                                                            Case No. 6:17-cv-710-Orl-37GJK

NEW DESTINY CHRISTIAN CENTER
CHURCH, INC.; and PAULA
MICHELLE WHITE,

      Defendants.

## ORDER

In the present motion, Defendants move to dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted. (Doc. 11 ("**MTD**").) Plaintiff responded to the MTD on June 7, 2017. (Doc. 20 ("**Response**").) For the reasons set forth below, the Court finds that the MTD is due be granted in part and denied in part.

### I. BACKGROUND

This case arises from: (1) a copyright infringement action that Defendant Paula White Ministries ("**PWM**") initiated against Plaintiff Shirley Jn Johnson ("**Johnson**") more than three years ago[1]; and (2) a derivative malicious prosecution action that Johnson initiated against Paula Michelle White ("**Ms. White**"), Paula Michelle Ministries, Inc. ("**PMM**"), Defendant New Destiny Christian Center Church, Inc. ("**New Destiny**"), and

---

[1] *See Paula White Ministries v. Johnson*, Case No. 6:14-cv-497-GAP-DAB ("**Copyright Action**"), Doc. 1.

Resurrection Life THC, Inc. in 2015.[2]

## A. Copyright Action

In the Copyright Action, PWM described itself as "a global ministry guided by the God-inspired vision of Paula White[,] who founded it with a strong desire to see lives transformed for the better through relationship with God." *Copyright Act*, Doc. 1, ¶ 1. PWM alleged that it used the Internet, television, radio, literature, and public speaking to communicate its message. *Id.* Its copyright infringement claims against Johnson were based on allegations that "Johnson knowingly violated federal copyright laws by copying, modifying, and displaying PMW's original and creative works—photographs and videos—on her website for financial gain and without permission or authorization from PWM." *Johnson v. New Destiny Christian Ctr. Church, Inc.*, No. 6:15-cv-1698-ORL-37GJK, 2017 WL 1093446, at *1 (M.D. Fla. Mar. 23, 2017) (citing the Copyright Action, Doc. 1, ¶¶ 8, 10, 13).[3] Johnson, however, maintained that such allegations were asserted maliciously and in retaliation for having exposed Paula White as a false preacher. *Copyright Action*, Doc. 16, p. 9. Ultimately, U.S. District Judge Gregory A. Presnell dismissed the case with prejudice, but "advised Johnson that, should she wish to pursue affirmative relief against PWM for malicious prosecution, she could do so by filing a

---

[2] *See Johnson v. New Destiny Christian Center Church, Inc.*, Case No. 6:15-cv-1698-Orl-37GJK ("**Malicious Prosecution Action**"), Doc. 1.

[3] The Undersigned previously described the lengthy relationship between the parties in an Order addressing motions to dismiss and for contempt sanctions in the Malicious Prosecution Action. As such, portions of the instant procedural history were taken from that Order.

2

separate complaint." *Johnson*, 2017 WL 1093446, at *2 (citing *Copyright Action*, Doc. 40).

B.  **Malicious Prosecution Action**

Pursuant to that advice, Johnson filed an action for malicious prosecution ("**Malicious Prosecution Action**") six months later, *see Johnson v. New Destiny Christian Ctr. Church, Inc.*, Case No. 6:15-cv-1698-Orl-37GJK, Doc. 1, which was eventually assigned to the Undersigned, *Id.*, Doc. 5. It is still ongoing. In the *ad damnum* clause of her Third Amended Complaint, "Johnson request[ed] economic, non-economic, and nominal damages pursuant to 17 U.S.C. § 512(f)." *Johnson*, 2017 WL 1093446, at *4. She also alleged that PMM and PWM "violated her rights under the First Amendment to the U.S. Constitution by filing the Copyright Action and making numerous false copyright infringement complaints to YouTube, which caused the removal of videos from her channel." *Id.* On March 23, 2017, the Court dismissed Johnson's purported federal claims under § 512(f) and the First Amendment without prejudice, but denied her leave to file a fourth amended complaint due to the late stage of the proceedings and the Court's belief that Johnson had intended only to assert a claim for malicious prosecution ("**March 23 Dismissal Order**"). *Id.* at *11. Crucial to the Court's determination was the fact that: (1) the operative pleading was titled "Plaintiff's Third Amended Complaint for Malicious Prosecution"; (2) the sole count was titled "Malicious Prosecution"; and (3) the introductory paragraph of the complaint stated only that she was suing the defendants for malicious prosecution. *Id.* at 5. The malicious prosecution claim remains pending in that action.

### C. Instant Action

Following the March 23 Dismissal Order, Johnson filed the instant action against Defendants alleging claims for misrepresentation under § 512(f) and abuse of process. (Doc. 1 ¶ 29 ("**Complaint**").) Presently, Defendants have moved to dismiss the Complaint pursuant to Rule 12(b)(6). (Doc. 11.) Johnson has responded (Doc. 20), and the matter is ripe for the Court's adjudication.

## II. LEGAL STANDARDS

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows [a] court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Id.* at 678; *see also Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016).

Under Rule 12(b)(6), a party may request dismissal of a pleading that falls short of these pleadings requirements. In resolving such motions, courts limit their consideration to the face of the complaint, its attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *See Tellabs, Inc. v.*

*Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007); *see also Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). Dismissal is warranted if, assuming the truth of the factual allegations of the complaint in a plaintiff's favor, there is a dispositive legal issue which precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

### III. ANALYSIS

#### A. Material Misrepresentation Claim Under 17 U.S.C. 512(f)

The Digital Millennium Copyright Act sets forth

> a detailed process allowing a copyright owner who observes infringing content on a website like YouTube to have the content taken down. Under the statute, the copyright owner must send a written communication to the service provider identifying the offending video and asserting under penalty of perjury that the sender is the copyright owner and has a good faith belief that the video infringes the sender's copyright.

*Big Cat Rescue Corp. v. Big Cat Rescue Entm't Grp.*, No. 8:11-cv-2014-JDW-TBM, 2013 WL 12158980, at *10 (M.D. Fla. Jan. 15, 2013). In turn, subsection (f) "sets out a private cause of action for anyone who is injured by a material representation that content or activity is infringing when it is not." *Disney Enters., Inc. v. Hotfile Corp.*, No. 11-20427-CIV, 2013 WL 6336286, at *46 (S.D. Fla. Sept. 20, 2013). Specifically, this subsection provides that:

> [a]ny person who knowingly materially misrepresents under this section that material or activity is infringing shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer . . . who is injured by such misrepresentation, as the result of the service provider disabling access to the material or activity claimed to be

> infringing, or in replacing the removed material or ceasing to disable access to it.

17 U.S.C. § 512(f)(1).

Defendants first argue that the Complaint fails to set forth that they knowingly made the purported misrepresentations. (Doc. 11, p. 5.) The term "knowingly" under § 512(f) means that a party "actually knew, should have known if it acted with reasonable care or diligence, or would have had no substantial doubt had it been acting in good faith, that it was making misrepresentations." *Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1204 (N.D. Cal. 2004) (citing *Knowingly*, BLACK'S LAW DICTIONARY (8th ed. 2004)). Knowledge "may be alleged generally." *Curtis v. Shinsachi Pharm. Inc.*, 45 F. Supp. 3d 1190, 1199 (C.D. Cal. 2014) (quoting Fed. R. Civ. P. 9(b)).

Here, Johnson has presented facts sufficient for the Court to draw the reasonable inference that Defendants knowingly misrepresented copyright infringement to YouTube. Specifically, the verified Complaint avers that: (1) on multiple occasions, PWM/New Destiny "willfully, knowingly[,] and materially" made § 512(f) misrepresentations to YouTube that Johnson's videos were infringing PWM's copyrights (Doc. 1, ¶¶ 33, 37, 40, 46); (2) "PWM did not hold a valid copyright registration or certificate to the content contained in [Johnson's] videos at the time of the misrepresentations" (*id.* ¶ 20); and (3) the material posted on Johnson's YouTube channel "was used lawfully in accordance with 17 U.S.C. § 107 of the Copyright Act"—the fair

use doctrine (*id.* ¶ 13, 20).[4] These allegations suffice to support a § 512(f) claim. *See Curtis*, 45 F. Supp. 3d at 1199 (finding that a § 512(f) claim was adequately pleaded where plaintiff "repeatedly alleged that [d]efendants knew that the takedown notices contained false infringement allegations"); *see also Lenz v. Universal Music Corp.*, 572 F. Supp. 2d 1150, 1154–55 (N.D. Cal. 2008) ("An allegation that a copyright owner acted in bad faith by issuing a takedown notice without proper consideration of the fair use doctrine . . . is sufficient to state a misrepresentation claim pursuant to Section 512(f) of the DMCA.").

Defendants also argue that Johnson "should not be allowed to rely on allegations against PWM in an attempt to hold . . . Defendants liable, without providing sufficient factual allegations demonstrating . . . the relationship between . . . Defendants and PWM." (Doc. 11, p. 6.) Johnson, however, sufficiently describes Defendants' relationship with PWM. In particular, the Complaint provides that New Destiny operates under the fictitious name PWM and that Ms. White is "President of the Board, a Director, President and Senior Pastor of PWM/[New Destiny]." (Doc. 1, ¶¶ 7–8.) The case caption in the Complaint also references these alleged relationship. (*Id.*, p. 1.)

Finally, Defendants assert that Johnson has not properly plead the existence of an

---

[4] In her response to the MTD, Johnson argues that, even if Defendants had held a valid copyright at the time of the misrepresentations, they failed to consider the fair use doctrine before issuing a takedown notice. (*See* Doc. 20, pp. 6–7.) Such a failure would lend additional support to her § 512(f) claim. However, this allegation does not appear on the face of the Complaint and, in assessing a motion to dismiss under Rule 12(b)(6), the Court may only consider allegations actually made in the Complaint.

injury caused by the misrepresentations. (Doc. 11, pp. 6–8.) Injury is a critical element of a § 512(f) claim. *Hotfile Corp.*, 2013 WL 6336286, at *48. As such, Johnson must allege that the purported misrepresentations proximately caused her damages. *See id.* (citing *Lenz v. Universal Music. Corp.*, No. C 07–3783 JF, 2010 WL 702466, at *10 (N.D. Cal. Feb. 25, 2010)). In the Malicious Prosecution Action, the Court found that Johnson failed to state a § 512(f) claim because "each factual allegation related to Johnson's *damages* stem[med] from the prosecution of the Copyright Action rather than the removal of her videos from YouTube." *Johnson*, 2017 WL 1093446, at *5. Here, Johnson again asserts damages stemming from prosecution of the Copyright Action in her Complaint, but she also cites damages resulting from the termination of her YouTube channel. (Doc. 1, ¶¶ 50–51.) Thus, Johnson has sufficiently pled the existence of an injury caused by the misrepresentations. Her assertion that she was deprived of her First Amendment rights, however, warrants a different outcome.

### B. First Amendment Injuries

Nestled in Johnson's misrepresentation and abuse of process claims are allegations that Defendants' actions deprived her of her First Amendment rights to free speech. (Doc. 1, ¶¶ 51, 62.) The First Amendment "prohibits *Congress and the States* from making any law abridging the freedom of speech." *United Bhd. of Carpenters & Joiners of Am. Local 610 v. Scott*, 463 U.S. 825, 831 (1983). As such, the First Amendment protects individuals against *government action*, not against wrongs by individuals or private entities." *Johnson*, 2017 WL 1093446, at *4. Nonetheless, in defending her purported First Amendment

injury, Johnson urges the Court to consider Defendants akin to public figures under the *New York Times* standard for liability in a libel action by a public figure. (Doc. 20, pp. 13–14.) That standard holds that a public figure is prohibited from recovering damages for a defamatory falsehood unless he proves that the statement was made with actual malice. *See Curtis Pub. Co. v. Butts*, 388 U.S. 130, 155 (1967).

Here, Johnson argues that her criticism of Defendants on her YouTube channel constituted fair comment so presumably, in the absence of proof of actual malice, Defendants could not properly sue her for copyright infringement. (*See* Doc. 20, pp. 13–14.) Nonetheless, the Court declines to extend the *New York Times* standard to the alleged deprivation of her First Amendment rights, as no one has asserted a libel claim. Thus, she cannot recover this element of damages. The Court reiterates that, should Johnson seek leave to amend her complaint, "any attempt to assert a First Amendment claim against Defendants [will] be futile." *Johnson*, 2017 WL 1093446, at *4.

### C. Abuse of Process

Plaintiff's abuse of process claim is based on three occurrences: (1) Defendants' initiation of the Copyright Action; (2) Defendants' continuation of the Copyright Action after process had issued; and (3) Defendant's misuse of discovery tools in the Malicious Prosecution Action. To state a claim for abuse of process, a plaintiff must allege three elements:

> '(1) that the defendant made an illegal, improper, or perverted use of process; (2) that the defendant had ulterior motives or purposes in exercising such illegal, improper, or perverted use of process; and (3) that, as a result of such action on the

part of the defendant, the plaintiff suffered damage.'

*Duncanson v. SJ Wathen Bloomington LLC*, No. 6:14-cv-704-ORL-40KRS, 2016 WL 7228743, at *2 (M.D. Fla. June 24, 2016) (quoting *S & I Invests. v. Payless Flea Market, Inc.*, 36 So. 3d 909, 917 (Fla. 4th DCA 2010)). Abuse of process claims only encompass acts of misuse *after* process is issued. *Whitney Info. Network, Inc. v. Gagnon*, 353 F. Supp. 2d 1208, 1212 (M.D. Fla. 2005) (citing *Miami Herald Pub. Co., Div. of Knight-Ridder v. Ferre*, 636 F. Supp. 970, 974–75 (S.D. Fla. 1985). Accordingly, to the extent that Johnson seeks relief for Defendants' actions in initiating the Copyright Action against her, Johnson does not properly plead a cause of action for abuse of process. Instead, these allegations sound in malicious prosecution. *See Paez v. Mulvey*, No. 15-20444-CIV, 2016 WL 6092597, at *17 (S.D. Fla. Oct. 19, 2016) ("A claim for malicious prosecution under Florida law is concerned with maliciously causing process to issue, while abuse of process is concerned with the improper use of process after it has been issued." (quoting *McMurray v. U-Haul Co.*, 425 So. 2d 1208, 1209 (Fla. 4th DCA 1983))).

To the extent Johnson seeks relief for Defendants' continuation of the Copyright Action *after* process had issued—that is, using the action to procure the permanent deletion of Johnson's YouTube channel—Johnson has sufficiently plead a claim for abuse of process. Notably, upon receiving information that the Copyright Action had been filed, YouTube notified Johnson that it could not honor her counter-notification to have her content reinstated. (Doc. 1-13, p. 1.) Johnson attached this notification to the Complaint. (*Id.*) It can be reasonably inferred from this notification that Defendants were responsible

for informing YouTube of the lawsuit. Moreover, the Complaint avers that Defendants continued the Copyright Action against Plaintiff with the "ulterior motive of using (or misusing) the Judicial System to intimidate, punish, shame, harass[,] and attempt to extort millions of dollars from [her]." (Doc. 1, ¶ 56.) As a result of these actions, Johnson asserts that she suffered damages, including the termination of her YouTube channel. (*Id.* ¶ 62.) Such allegations are all that is required to assert an abuse of process claim.

Finally, to the extent that Johnson seeks relief for Defendants' purported misuse of discovery during the Malicious Prosecution Action, the claim warrants closer examination. Johnson asserts that, during the Malicious Prosecution Action, Defendants deposed her "for the improper purpose of obtaining [her] personal information, and to harass or 'irritate' [her]." (Doc. 1, ¶ 58.) She claims this is evidenced by the fact that "[n]inety-nine percent of the questions were irrelevant or barred by the doctrine of *res judicata*." (*Id.*) Johnson also alleges that Defendants "used the discovery process for the improper purpose of obtaining [her] and her daughter's personal information so that it [could] be used at a later date for nefarious purposes." (*Id.* ¶ 60.) To illustrate, Johnson explains that Defendants filed a motion to compel her "to disclose her daughter's personal information under the pretense of noticing her [daughter] for deposition," but never contacted her daughter within the discovery period. (*Id.* ¶ 59.) As a result of Defendants' actions, Johnson alleges that she and her daughter "will forever be fearful that one day their personal information will be used for [evil] purposes." (*Id.* ¶ 64.)

Defendants counter that Johnson has failed to assert how their use of the discovery

process was wrongful. (Doc. 11, p. 10.) The Court agrees. To be sure, the Federal Rules of Civil Procedure permit discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevancy "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). As such, Defendants' deposition of Johnson and request for personal information during the Malicious Prosecution Action were within the scope of discovery. Because the Complaint fails to explain *how* Defendants made *improper* use of the discovery process in the Malicious Prosecution Action, it fails to state a claim for abuse of process on this ground. *Cf. Ferre*, 636 F. Supp. At 975 ("As plaintiffs' complaint to the State Attorney, however malicious, did not involve any improper use of the *civil* process it fails to state a claim for abuse of process.").

## IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendants Motion to Dismiss (Doc. 11) is **GRANTED IN PART AND DENIED IN PART**.

    a. The Motion is **GRANTED** to the extent that: (i) Defendants seek dismissal of any purported injury under the First Amendment; and (ii) Johnson's abuse of process claim seeks relief against Defendants for initiating the Copyright Action and for misusing discovery

during the Malicious Prosecution Action.

b. In all other respects, the Motion is **DENIED**.

2. On or before Friday, **September 8, 2017**, Plaintiff may file an amended complaint that either remedies or removes the deficient allegations identified in this Order. Defendants will then have fourteen days to respond to the amended pleading.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on August 25, 2017.



ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record
*Pro Se* Party