FILED

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

2018 DEC -3  PM 2:59

SHIRLEY JN JOHNSON, individual
        Plaintiff,

CASE NO:
6:17-cv-710-Orl-37DCI

v.

NEW DESTINY CHRISTIAN CENTER
CHURCH, INC., Florida not for profit corporation
a/k/a Paula White Ministries

PAULA MICHELLE WHITE, individually and in
her official capacity as President, Director and Senior
Pastor of New Destiny Christian Center Church, Inc.,
a/k/a PAULA MICHELLE CAIN

        Defendants.

_____/

PLAINTIFF'S VERIFIED
RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION
FOR FINAL
SUMMARY JUDGMENT

## PLAINTIFF'S VERIFIED RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT

COMES NOW Plaintiff, Shirley Jn Johnson, *pro se*, and respectfully files her

Verified Response and Memorandum of Law in Opposition to Defendants' Dispositive

Motion for Final Summary Judgment. (Doc. 75). Defendants' Dispositive Motion for

Summary Judgment should be denied, and summary judgment should be granted in favor

of Plaintiff.

I.    SUMMARY JUDGMENT STANDARD

> The main inquiry is to "consider 'whether the evidence presents a
> sufficient disagreement to require submission to a jury or whether it
> is so one-sided that one party must prevail as a matter of law.'" *Id.*
> (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106
> S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)). [The Court] must
> "'consider all the evidence, and the inferences drawn therefrom, in

38         the light most favorable to the nonmoving party.'" *Id.* (quoting
39         *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989)).

40

41   *U.S. E.E.O.C. v. W&O, Inc.* 213 F. 3d 600, *610 (11th Cir. 2000).

42

43         Defendants did not come forward with evidence to support their affirmative

44   defenses; and the evidence in this case is so one-sided as to warrant summary judgment

45   in favor of Plaintiff; Defendants' own evidence supports Plaintiff's claims. However, if

46   the Court does not enter summary judgment in favor of Plaintiff – as justice so requires –

47   the case should be set for trial on the following genuine issues of material fact.

48   II.     GENUINE ISSUES OF MATERIAL FACT

49         "Pro se pleadings are held to a less stringent standard than pleadings drafted by

50   attorneys and will, therefore, be liberally construed." *Hughes v. Lott*, 350 F. 3d 1157,

51   *1160 (11th Cir. 2003) (quoting *Tannenbaum  v. United States*, 148 F. 3d 1262,*1263

52   (11th Cir. 1998) (per curiam).

53                " 'Genuine disputes are those in which the evidence is such that a
54                reasonable jury could return a verdict for the non-movant. For factual
55                issues to be considered genuine, they must have a real basis in the
56                record.' (*Hairston*, 9 F. 3d at 919). ... Where the non-movant presents
57                direct evidence that, if believed by the jury, would be sufficient to win
58                at trial, summary judgment is not appropriate even where the movant
59                presents conflicting evidence.  It is not the Court's role to weigh
60                conflicting evidence or to make credibility determinations; the non-
61                movant's evidence is to be accepted for purposes of summary
62                judgment. See, *e.g.*, *Beckwith*, 58 F. 3d at 1564; *Hairston*, 9F. 3d at
63                918; *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors, Ass'n* 809 F.
64                2d 626, 630-32 (9th Cir. 1987). Likewise, all inferences drawn from
65                the evidence must be viewed in the light most favorable to the non-
66                moving party. *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.* 84 F.
67                3d 1380, 1383 (11th Cir. 1996).  Nevertheless, there is a difference
68                between direct evidence and inferences that may permissibly be drawn
69                from that evidence. Where a non-movant presents direct evidence that
70                creates a genuine issue of material fact, the only issue is one of
71                credibility; thus there is no legal issue for the court to decide.
72                *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 253-55, 106 S. Ct 2505,

73  2513, 91 L.Ed. 2d 538 (1986)(credibility determinations are a jury
74  function.).

75  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, *742, *743 (11th Cir.1996).

76
77  A.   DMCA §512(f) Does Not Prempt Abuse Of Process Claim

78  The DMCA does not preempt Plaintiff's state law abuse of process claim.

79  Defendants cited *Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, *1205-06

80  (N.D. Cal. Sept. 30, 2004) (If adherence to the DMCA's provisions simultaneously

81  subjects the copyright holder to state tort law liability, there is an irreconcilable conflict

82  between state and federal law).   First, Defendants are not Internet Service Providers

83  (ISPs). *Online Policy* at *1205 specifically states that the DMCA safe harbor provisions

84  were *not* designed to protect *copyright holders*.

85  Copyrights cannot be owned in a fictitious name. The United States Copyright

86  Office (USCO), specifically states that, "In no case should you omit the name of the

87  copyright claimant.  You can use a pseudonym for the claimant name.  But be aware that

88  if a copyright is held under a fictitious name, business dealings involving the copyrighted

89  property may raise questions about its ownership." (Exh. 1).  Legally, NDCC/PWM's

90  videos are unregistered, therefore their DMCA copyright takedown notifications are

91  invalid.  Importantly, the Torah Scroll-wrapping video (Exh. 2, Clip 1) was created and

92  aired in 2007, therefore, would not be covered even if the copyright registration was

93  valid; many clips in Plaintiff's videos are outside the 2010-2011 registration date.

94  (Example, Exh. 2, Clips 2, 3).  See *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*,

95  No. C 10-05696 CRB; 2011 WL 2690437 at *4 (N.D. Cal., July 8, 2011):

96      " '[B]ecause the Court finds that the DMCA is not applicable to the
97      instant dispute, it concludes that the **DMCA does not preempt** the [

-3-

98         ] action [for tortious interference].' *Rock River Comm., Inc. v.*
99         *Universal Music Group, Inc.*, No. CV08–635 CAS (AJWx), 2011
100       WL 1598916, at *15 (C.D.Cal. Apr.27, 2011); *see also World*
101       *Auxiliary Power,* 303 F.3d at 1120 (**no preemption of state law**
102       **regarding unregistered copyrights because <u>the Copyright Act</u>**
103       **<u>does not apply to unregistered copyrights</u>).**"

104       Tortious interference is a state common-law tort as is abuse of process; therefore,

105   Plaintiff's tort action for abuse of process claim is not preempted, either. "The DMCA is

106   akin to a statutorily created intentional tort…" *Lenz v. Universal Music Corp.,* <u>815 F. 3d</u>

107   <u>1145, *1156 (9th Cir. 2015) (amended 2016).</u>   More importantly, the U.S. Supreme

108   Court in *Wheeldin v. Wheeler.* <u>373 U.S. 647, *655,  *657, *659-660 (1963)</u> determined

109   that claims such as abuse of process were actionable under common-law principles, and

110   therefore were "creatures of state law" that could be entertained in federal courts under

111   §1331.  See also *Blaha v. Rightscorp, Inc.* <u>No. CV 14-9032 DSF (JCGx), 2015 WL</u>

112   <u>4776888 at *1 (C.D. Cal. May 8, 2015)</u> stating:

113         "A state law claim arises under federal law if it 'necessarily raise[s]
114         a stated federal issue, actually disputed and substantial, which a
115         federal forum may entertain <u>without disturbing any congressionally</u>
116         <u>approved balance of federal and state judicial responsibilities.</u>'
117         *Grable & Sons Metal Products., Inc. v. Darue Eng'g & Mfg.*, 545
118         U.S. 308, 314 (2005)… Further, transformation of abuse of process
119         claims involving federal process into federal claims threatens to
120         federalize a substantial number of ordinary state tort claims and
121         would upset the normal balance between federal and state courts.'"
122         [underline added].
123
124       This present case arises under 28 U.S.C. §1331 federal question, 28 U.S.C. §1332

125   (a)(1) and (c)(1) diversity, and with supplemental authority to resolve state common-law

126   issues under 28 U.S.C. §1367(a), and therefore creates no conflict between federal and

127   state law.  In *Opinion Corp.,v. Roca Labs.,* <u>No. 8:15-CV-811-17AEP; 2016 WL 6824383</u>

128   <u>at *1,*2,*4 (M.D. Fla. Nov. 17, 2016),</u> the Court stated, that the plaintiff asserted a

129 "state-law claim for abuse of process <u>based on</u> [Defendant's] transmission of a statutory

130 [DMCA] '<u>takedown notice</u>,' which, according to Plaintiffs, falsely charged them with

131 copyright infringement. ... The remaining claim[] of abuse of process...sound[s] in state

132 law and do[es] not effectively invoke this Court's federal-question jurisdiction. ...

133 §1367(a)"). (<u>citing</u> *Stuart v. Weitzman, LLC v. Microcomputer Res., Ina., 542 F. 3d 859,*

134 *861-62 (11th Cir. 2008) and Borden v. Katzman, 881 F. 2d 1035, 1038-39 (11th Cir.*

135 *1989)),* [emphasis added].

136   Moreover, this present case, adhering to the DMCA's provisions does not

137 *simultaneously* subject Defendants to a state tort liability of abuse of process. The abuse

138 of a *judicial* process occurred when Defendants filed, and continued, a SLAPP (sham)

139 copyright infringement lawsuit in 2014, in which every allegation against Plaintiff was

140 false. Submitting DMCA takedown notifications to You Tube in 2012-2013 did not

141 abuse a *judicial* process. See *U.S. Steel, LLC v. Tieco, Inc., 261 F. 3d 1275, *1291 (11th*

142 *Cir. 2001):*

143    To state an abuse of process claim, one must allege the abuse of a
144    *judicial* process. *See* W. Page Keeton, *Prosser and Keeton on Torts*
145    121, at 898 (5th ed. 1984) (cited in *Drill Parts and Serv. Co. v. Joy*
146    *Mfg. Co., 619 So. 2d 1280, 1288, (Ala. 1993)).* [emphasis added].

147

148 Filing a SLAPP (sham) lawsuit in 2014 with an ulterior, improper motive, and without

149 probable cause *did* violate a judicial process, in the below described two ways:

150    The Court of Appeals characterized "sham" litigation as one of <u>two</u>
151    <u>types</u> of "abuse of ... <u>judicial</u> processes": either
152    "'misrepresentations ... in the adjudicatory process'" or the pursuit
153    of "'a pattern of <u>baseless,</u> repetitive claims'" instituted "'<u>without</u>
154    <u>probable cause,</u> and regardless of the merits.'" 944 F. 2d, at 1529
155    (quoting *California Motor Transport Co. v. Trucking Unlimited,* 404
156    U.S. 508, 513, 512 (1972). [underline added].

157

158   *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 US 49,
159   *54 (1993).
160
161          Defendants abused the *extrajudicial*, DMCA takedown process for which §512(f)
162   provides its own remedy for relief. *Lenz v. Universal Music Corp.*, 815 F. 3d 1145,*1148
163   (9th Cir. 2015)(amended 2016). However, §512(f) does not provide a remedy for relief
164   for abuse of a *judicial* process, even if there are substantial federal issues.
165          On September 9, 2018, Mr. Knight publicly acknowledged that Defendants filed a
166   SLAPP lawsuit (Exh. 2, Clips 4, 5), which they later dismissed attempting to escape
167   justice (Exh. 2, Clip 6); and three (3) days after filing the SLAPP copyright infringement
168   lawsuit, Ms. White publicly preached that it was "payback" which constitutes retaliatory,
169   malicious abuse of process. (Exh. 2, Clip 7, and Clips 7-19 also demonstrate malice).
170           One month after filing their Complaint, on April 29, 2014, Defendants notified
171   You Tube of the pending Copyright Infringement Lawsuit against Plaintiff, and expressly
172   requested that You Tube, "please remove the below listed videos **in lieu of the outcome**
173   of this case" [emphasis added]. (Exh. 3, Pg. 2), which constitutes sham litigation – abuse
174   of process.  In *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries,*
175   *Inc.*, 508 US 49, *50 (1993) the Court stated:

176          Under this second part of the [sham] definition, a court should focus
177          on whether the baseline suit conceals "an attempt to interfere
178          directly" with a competitor's business relationships, *Noerr*, supra
179          365 U.S. at 144, 81 S. Ct. at 533, through the "use [of] the
180          governmental *process* – as opposed to the outcome of that process –
181          as an anticompetitive weapon." [italics in original, underline,
182          added]. *Columbia v. Omni Outdoor Advertising, Inc.* 499 U.S. 365,
183          380 111 S. Ct. 1344, 1354, 113 L.Ed. 2d 382.
184
185          On May 2, 2014, You Tube removed at least 56 non-infringing videos from
186   Plaintiff's channel. (Exh. 4) (example see, Exh. 2, Clips 24-38). Defendants submitted the

187    false DMCA takedown notification for the immediate, improper purpose of interfering

188    with, and suppressing criticism of Ms. White, and her Biblical teachings.

189         Although the subsequent April 29-May 1, 2014 false takedown notifications

190    further abused the judicial process, they did not form the only basis for the abuse of

191    process claim; the initial abuse of process occurred when Defendants filed, and

192    continued, the bogus copyright lawsuit on March 27, 2014 through January 22, 2015,

193    with the ulterior motive of retaliating, intimidating, harassing, punishing, and extorting

194    millions of dollars from Plaintiff.  See *Blaha v. Rightscorp, Inc.*, Case No. CV-14-9032

195    DSF (JCGx); 2015 WL 4776888, at *3 (C.D. Cal. May 8, 2015).

196         Two months after the copyright lawsuit was dismissed with prejudice, *res

197    judicata*, Defendants disobeyed the Court's Order (Exh. 5)  by authorizing their attorney,

198    Vanessa L. Braeley, to file another false DMCA takedown notice (Exh. 6) with You Tube

199    concerning one of the same videos ("*Paula White Sacrifices Chickens-amended*"), which

200    was amended to remove unrelated third-party content) that was the subject of the

201    copyright infringement action. (Exh. 2, Clip 25).   *Chambers v. NASCO, Inc.*, 501 U.S.

202    32, *57 (1991).  "... the party may be sanctioned for abuses of process occurring beyond

203    the courtroom, such as disobeying the court's orders. [U.S. S.Ct. citations]."

204         B.   Defendants Acted With Scienter, And Ignored The Fair Use Doctrine

205         In *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, fn 3 (11th Cir. 2001),

206    the Eleventh Circuit stated, "I believe that fair use should be considered an affirmative

207    *right* under the 1976 Act, rather than merely an affirmative defense, as it is defined in the

208    Act as a use that is not a violation of copyright. *See Bateman v. Mnemonics, Inc.*, 79 F.3d

209    1532, 1542 n. 22 (11th Cir. 1996)." [italics in original].

210           **Scienter -**   "a mental state embracing intent to deceive, manipulate, or defraud."

211     *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, fn 12 (1976).

212           "A copyright holder who pays lip service to the consideration of fair
213           use by claiming it formed a good faith belief when there is evidence
214           to the contrary is still subject to § 512(f) liability. *Cf. Disney*
215           *Enters., Inc. v. Hotfile Corp.*, No. 11-cv-20427, 2013 WL 6336286,
216           at *48 (S.D. Fla. Sept. 20, 2013) (denying summary judgment of the
217           § 512(f) counterclaim due to 'sufficient evidence in the record to
218           suggest the [Plaintiff] Warner intentionally targeted files it knew it
219           had no right to remove.'"
220
221     *Lenz v. Universal Music Corp.*, 815 F. 3d 1145, *1154, *1155 (9th Cir. 2015) (Amended
222     Mar. 17, 2016).
223
224         There is sufficient evidence in the record that proves Defendants, their attorneys,

225    and authorized agents acted with scienter, and ignored the fair use doctrine. Additionally,

226    Defendants' Affirmative Defenses Nos. 5, 6, 7, 8, 10, 12, 13 claiming scienter, and

227    subjective good faith belief also fail for the following reasons:

228          1.  DMCA Takedown Notifications

229         Defendants, their agents, and "hired gun" attorneys have been deceptive,

230    manipulative, malicious, and fraudulent in making false DMCA claims from 2012

231    through 2015, and by filing and continuing a SLAPP copyright infringement lawsuit in

232    2014. Defendants' and their attorneys did not have a subjective good faith belief when

233    they willfully and knowingly filed numerous false DMCA takedown notifications (and

234    emails) to You Tube – some purposely omitting crucial information such as "under

235    penalty of perjury." You Tube's responses to many of Defendants' takedown

236    notifications (attached as Exh. 7) were:

237          • On Jan 31, 2012 at 1:45 pm & 1:49 pm - You have not provided
238            adequate identification of the particular copyrighted work at
239            issue... On January 31, 2012 at 1:58 pm – We are concerned

240                     that your submission may be **fraudulent**... <u>On January 31, 2012</u>
241                     <u>at 2:00 pm</u> – You have not provided adequate identification of
242                     the particular copyrighted work at issue. (Doc. 75-1, Pgs. 17-21).
243                     [emphasis added].
244
245            •   <u>On February 8, 2012 at 12:57 pm</u> - ... In accordance with
246               copyright law we require complete copyright notifications for
247               each removal request. ... <u>On February 9, 2012 at 2:50 pm</u> – We
248               are concerned that your submission may be **fraudulent**... (Doc.
249               75-1, Pgs 25-27) [emphasis added].
250
251            •   <u>On February 23, 2012, at 9:24 am,</u> Defendants stated to
252               YouTube,"...This user (theremnantsjnj – Shirley Johnson) is, to
253               this date, the most persistent violator of our intellectual property
254               rights on your website, even **<u>devoting an entire website</u>**
255               (http://theremnantsjnj.com) **<u>to violation of our intellectual</u>**
256               **<u>rights</u>**..." [emphasis added]. (Doc. 75-2, Pg.2).
257
258           Yet Defendants never sent one takedown notice to Plaintiff's ISP provider, even

259  though in their Complaint, Defendants claimed (5 times) substantial damage (over $16,

260  million) due to Plaintiff selling their copyrighted videos and photographs on her *<u>website</u>*.

261           Plaintiff's website and videos were never disabled or removed. Defendants were

262  not concerned with Plaintiff's website, because they *knew* their claims were false, and

263  because Plaintiff's website was virtually unknown, globally rating 17,155,015. (Exh. 8).

264  Defendants were concerned that Ms. White was being exposed as a false preacher,

265  con/scam artist on You Tube – which everybody watches, globally. Mr. Knight even

266  testified that Defendants were mainly concerned that when they typed in the name Paula

267  White/Paula White Ministries, Plaintiff's videos were some of the first to appear. (Exh.

268  9; Pg.17, Ln 6-25). Prior testimony is admissible under Fed. R. Evid. 403.

269            •   <u>On May 1, 2014 at 4:37 PM -</u>...In order to take further action on
270               your request, we just need two further items satisfied. (Exh. 3, P.1).
271
272                1. A statement that the complaining party has a **<u>good faith</u>**
273                   **<u>belief</u>** that use of the material in the manner complained of

274                      is not authorized by the copyright owner, its agent, or the
275                      law.
276

277            2. A statement that the information in the notification is
278                      accurate, and **under penalty of perjury,** that the
279                      complaining party is authorized to act on behalf of the
280                      owner of an exclusive right that is allegedly infringed.
281

282 Defendants initially omitted the above statements because they *knew* their claims

283 of "third-party" (or otherwise) copyright infringement were *fraudulent*. Subsequently,

284 Defendants included the statements, then You Tube removed at least 56 videos from

285 Plaintiff's You Tube channel on May 2, 2014. (Exh. 4). Defendants did not own "third-

286 party" copyrights to any of the videos. One of the videos which Defendants did not own

287 copyrights to – third-party or otherwise – was titled *Not About The Money.* (Exh. 2,

288 Clips 36, 37). Defendants falsely claimed copyright infringement on Clip 36 because Ms.

289 White did not want to be heard lying against Senator Grassley. The copyrights belong to

290 T.D. Jakes Ministries, and MSNBC News.

291      • On June 25, 2014 at 5:28 pm – We are **very** concerned that your
292       copyright notification **may not be valid** for some or all of the videos
293       identified in your notification. Please keep in mind that in many
294       countries, it is legal to use copyrighted works in specific ways
295       **without** the owner's authorization, particularly for transformative
296       purposes such as news reporting, parody, **commentary,** or review.
297       Some countries protect such uses under doctrines of "fair use" or
298       "fair dealing... If you still believe that your copyright is infringed by
299       the You Tube video(s) identified in your notification, please explain
300       in detail why you think so. We ask that you provide more detail
301       than was included in your initial notice. [emphasis added]. (Exh.
302       10). (Doc. 75-1, Pg. 47-49).
303

304 On June 25, 2014 at 5:31 pm, Bradley Knight, *Vice President* (as opposed to

305 *General Manager*), of Paula White Ministries submitted a "new" copyright notification

306 falsely claiming that Plaintiff's You Tube video titled *TD Jakes & Paula White - Satanic*

307    *Tongues*, (Exh. 2, Clip 24) with the URL: http://www.youtube.com/watch?v=CSC

308    n3xvhyPg infringed Defendants' video titled "*My Praise is About to Produce-pt.7*", (Exh.

309    2, Clip 45), with the URL: http://www.youtube.com/watch?v=zQPU9eLLpmg.  (See

310    Exhs. 25, 26 on Thumb Drive (Exh. 2)).

311          On <u>June 25, 2014 at 5:51 pm</u>, Mr. Knight falsely claimed that Plaintiff's video

312    was infringing because, "*12 minutes* of a *14-minute* video are covered, which is a large

313    extent of the work. ... <u>[I]f there needs to be **monetary damages** attached, I would like to</u>

314    <u>point out our current **court case**</u> against the user due to both the copyright infringement

315    and **<u>disparaging nature</u>** of her 'uploads'...." [emphasis added].  (Exh. 10).

316          Plaintiff's video *TD Jakes & Paula White - Satanic Tongues*, which is only *8*

317    *minutes* and *5 seconds* in duration, used a *52-second* clip which was taken from a *1 hour*

318    and *29 minute* sermon which Plaintiff recorded from Defendants' internet broadcast on

319    August 4, 2011. (Exh. 2, Clip 46, 1-1/2-hour sermon at 1:05:20-1:05-28; 1:05:47-1:06:03;

320    1:11:41-1:12:06). There is absolutely no way that Mr. Knight could have had a subjective

321    good faith belief that Plaintiff's video was infringing, nor could Mr. Knight have

322    mistaken 52 seconds for 12 minutes. "[I]n morals, and in the eye of the law, there is a

323    vast difference between the criminality of a person acting mistakenly from a worthy

324    motive, and one committing the same act from a wanton and malignant spirit, and with a

325    corrupt and wicked design." *Smith v. Wade* 461 U.S. 30, *64 (1983) (quoting *Simpson v.*

326    *McCaffrey*, 13 Ohio 508, 522 (1844).

327          Further, it is very obvious that the 52-second clip was not taken from

328    Defendants' 14 minute, 57 second You Tube video, as Mr. Knight falsely claimed.

329    Plaintiffs 52-second clip, and the 1-hour, 29-minute sermon both have wide black left and

330   right edges; Defendants' You Tube video does not.  (Exh. 2, Clip 45; Exhs. 25, 26 on

331   thumb drive).  Plaintiff recorded Defendants' 14 minute, 57 second You Tube video for

332   comparison purposes in this case.  Mr. Knight's false claims were intentional, deceptive,

333   fraudulent, and malicious, as were *all* of Defendants' copyright infringement claims,

334   which warrant punitive damages.

335        Moreover, "[a]pplication of the fair use doctrine is particularly apropos where the

336   use of the work disparages the original." *Sedgwick Claims Mgmt., Svcs., Inc. v. Delsman*

337   2009 WL 2157573 at *5 (M.D. Cal. Jul. 17, 2009) (citing *Liebovitz v. Paramount*

338   *Pictures Corp.* 137 F. 3d 109, 115 n. 3 (2nd Cir. 1998).  Also, the Court in *Murphy v.*

339   *Daytona Beach Humane Society, Inc.*, 176 So. 2d 922, *923 [1][2], *924 (Fla. 1st DCA

340   1965) speaking of a nonprofit corporation, stated that, "[p]rivate corporations which

341   claim the confidence of the public and seek the possession of public funds are among the

342   subjects that may be criticized in accordance with the rules of <u>fair comment,</u> and it has

343   even been said the bona fide criticism of such corporations <u>should be encouraged</u> as a

344   means of public security, rather than suppressed." [underline added].

345        The "court case" (Exh. 11) falsely alleged that Defendants' damages were due to

346   Plaintiff copying and selling their copyrighted videos on her website, as opposed to

347   diminished ad revenue from You Tube.  Mr. Knight's false claim was willful, knowing,

348   malicious, fraudulent, and deceptive. Which warrants punitive damages.

349        More importantly the Eleventh Circuit in *Suntrust Bank v. Houghton Mifflin Co.,*

350   268 F.3d 1257, *1281 (11th Cir. 2001) stated:

351           *see id.* at 590, 114 S.Ct. at 1177. "[I]f the secondary work harms the
352           market for the original through criticism or parody, rather than by
353           offering a market substitute for the original that supersedes it, 'it

-12-

354    does not produce a harm cognizable under the Copyright Act.' " *On*
355    *Davis v. The Gap, Inc.,* 246 F.3d 152, 175 (2d Cir.2001) (quoting
356    *Campbell,* 510 U.S. at 592, 114 S.Ct. 1164). "[T]he role of the
357    courts is to distinguish between biting criticism that merely
358    suppresses demand and copyright infringement, which usurps [the
359    market for the original]." *Campbell,* 510 U.S. at 592, 114 S.Ct. at
360    1178 (internal quotation marks omitted) (brackets omitted).
361
362    Plaintiff's videos do not usurp the market or fulfill the demand for Defendants'

363    videos, as Plaintiff's videos are highly transformative, and serve a completely different

364    function, which exposes Ms. White as a false preacher and a religious con/scam artist.

365    *Fisher v. Dees,* 794 F. 2d 432,*438 (9th Cir. 1986).   Ms. White has on at least one

366    occasion admitted that she was good at scamming the Word (Bible Scriptures). (Exh. 2,

367    Clip 52).

368    On July 1, 2014 at 3:01 pm, You Tube removed the "*TD Jakes & Paula White –*

369    *Satanic Tongues*" video along with the remaining videos, then permanently terminated

370    Plaintiff's channel, as this claim created a "third strike" against Plaintiff's channel.

371    (Exh.12). Mr. Knight purposefully did not include this video in the May 1-2, 2014

372    takedown notification (Exh. 4), because he wanted to use it to create the third strike that

373    would terminate Plaintiff's entire channel – mission accomplished.  Several of the videos

374    that were terminated as a result, had nothing to do with Paula White/PWM. (Exh. 2, Clips

375    39, 40, 41, 42).

376    On May 20, 2015, Mr. Knight willfully, and knowingly misrepresented to You

377    Tube that Plaintiff's video titled "*Paula White Married Jonathan Cain*" (Exh. 2, Clip 29)

378    infringed Defendants' copyrights (Exh. 13).  Mr. Knight willfully and knowingly made

379    the false claim in order to remove the video because of the critical truth that it contained

380    about his mother Defendant White – not because of copyright infringement.  Plaintiff

-13-

381    submitted a counter-notification (Exh. 14), the video was restored, and no lawsuit was

382    ever filed; neither did Defendants file a lawsuit after Ms. Braeley submitted a false

383    DMCA takedown notification on March 6, 2015. (Exh. 6). See *Lenz v. Universal Music*

384    *Corp., 815 F. 3d 1145, *1155 (9th Cir. 2015) (quoting Online Policy Grp. v. Diebold, Inc.*

385    *337 F. Supp. 2d 1195, 1204-05 (N.D. Cal. 2004)* ("...The fact that [Defendant] never

386    actually brought suit against an alleged infringer suggests strongly that [Defendant]

387    sought to use the DMCA's safe harbor provisions – which were designed to protect ISPs,

388    not copyright holders – as a sword to suppress publication of embarrassing content rather

389    than as a shield to protect its intellectual property."). [underline added].  See also *Suntrust*

390    *Bank v. Houghton Mifflin Co., 268 F.3d 1257, *1283 (11th Cir. 2001).*

391        "Because the social good is served by increasing the supply of
392        criticism—and thus, potentially, of truth—creators of original works
393        cannot be given the power to block the dissemination of critical
394        derivative works." *Leibovitz*, 137 F.3d at 115 n. 3. **"Copyright law**
395        **is not designed to stifle critics..."** *Fisher*, 794 F.2d at 438 (citation
396        and internal quotation marks omitted)." [bold added].
397
398         2.  Defendants' Fraudulent Attempt to Register Plaintiff's You Tube Videos

399         On March, 27, 2014, Defendants also applied for a copyright registration from the

400    United States Copyright Office (USCO) in an attempt to fraudulently gain control over

401    Plaintiff's videos so as to deceive the Court, and deprive the general public of knowing

402    the truth about Paula White.   On the Application Form, Defendants stated, "In

403    compliance with 17 U.S.C. §508, you are hereby advised that a court action or appeal has

404    been filed on the following copyright(s)."   Under "Title Of Work", Defendants typed,

405    "see attached complaint and exhibits".  The exhibit attached to Defendants' Complaint

406    was a list of *Plaintiff's* transformative You Tube videos, which were displayed on

407    Plaintiff's website – (Exh. 11 - Application Form). 17 U.S.C. §411(a) states in part:

408        …no <u>civil action for infringement of the copyright</u> in any United
409        States work shall be instituted **until** preregistration or registration of
410        the copyright claim has been made in accordance with this title. …
411        <u>[T]he applicant is entitled to institute a civil action for infringement</u>
412        <u>if notice thereof, with a copy of the complaint, is served on the</u>
413        <u>Register of Copyrights.</u> [underline added].
414
415        4.   <u>Defendants Deceptively Concealed Their True Identity</u>

416        Defendants filed a baseless, SLAPP copyright infringement complaint in the

417    Middle District of Florida, Orlando Division, on March 27, 2014, using the fictitious

418    name Paula White Ministries. (Exh. 11). Rule 17(a)(1) states: "An action must be

419    prosecuted in the name of the real party in interest."   Defendants violated Rule17(a)(1)

420    by concealing their true identities behind a fictious name because they *knew* their claims

421    were false.

422        B.   <u>DEFENDANTS' ADVICE OF COUNSEL DEFENSE FAILS</u>

423        1.   <u>Vanessa L. Braeley Aided and Abetted Defendants</u>

424        In violation of the Court's Order (Exh. 5), on March 6, 2015, Defendants

425    authorized their attorney, Vanessa L. Braeley, to submit a false DMCA takedown

426    notification (Exh. 6) to You Tube on Plaintiff's video titled *"Paula White Sacrifices*

427    *Chickens – amended"* (Exh 2, Clips 25, 43).   Ms. Braeley went beyond advising

428    Defendants, to actually, illegally, submitting a false DMCA takedown notification, which

429    constitutes aiding and abetting.

430        2.   <u>Thomas A. Sadaka  Conspired, and Aided and Abetted Defendants</u>
431

432   Mr. Sadaka conspired with, and aided and abetted Defendants in their wicked

433   scheme by copying every false allegation against Plaintiff verbatim from Case No. 6:14-

434   cv-337-Orl-31KRS. (Exh. 24).  Defendants admitted under oath that they were aware of

435   the false allegations in the copyright complaint. (Exh. 15, Req. 1,2,3; Exh. 16, Req. 2,3;

436   Exh. 2, Clips 54, 57); yet, Defendants turned a blind eye to the false allegations. Mr.

437   Sadaka also submitted a fraudulent copyright application to the U.S.C.O, aiding

438   Defendants in attempting to obtain copyrights to Plaintiff's videos. (Exh. 11).

439   Further aiding Defendants in the Malicious Prosecution Action, in his December

440   16, 2016 Affidavit, Mr. Sadaka stated: "Beyond filing the Copyright Infringement

441   Complaint, in early 2014, I submitted a takedown notice to You Tube and complied with

442   the takedown requirements of 17 U.S.C. §512." (Exh. 17, ¶20). Mr. Sadaka admitted

443   under oath that he went beyond "legally advising" to "aiding and abetting."

444   Mr. Sadaka also *falsely* claimed: "I also advised You Tube of the pending

445   Copyright litigation, and as a result, You Tube refused to reinstate several videos posted

446   by Ms. Johnson." (Exh. 17, ¶20).   However, You Tube verified that it was Ms. White

447   and Mr. Taylor who notified You Tube of the pending Copyright Infringement Lawsuit.

448   (See Exh. 18).

449   Mr. Sadaka, and Ms. Braeley were merely "hired guns" who abused their roles as

450   attorneys by conspiring with, and aiding and abetting Defendants.  Defendants' "advice

451   of counsel" affirmative defense fails as a matter of law, morals, and ethics. See *Nye &*

452   *Nissen v. U.S.*, 336 U.S. 613, *618 (1949):

453         In order to aid and abet another to commit a crime it is necessary
454         that a defendant 'in some sort associate himself with the venture,
455         that he **participate** in it as in something that he wishes to bring

-16-

456               about, that he seek **by his action** to make it succeed.' L. Hand, J., in

457               United States v. Peoni, 2 Cir., 100 F.2d 401, 402. [emphasis added].

458

459    See also *U.S. v. Walser*, 3 F. 3d 380, HN13, *382, *387-89 (11th Cir. 1993); *United States*

460    *v. Gellene* 182 F. 3d 578, *594-*97 (7th Cir. 1999) ("We next ask, therefore, whether Mr.

461    Gellene's abuse of his role as attorney for the debtor significantly facilitated the

462    commission of the perjury. The district court determined that it did;"). [underline added].

463    Mr. Sadaka, and Ms. Braeley are no longer employed at Nejame Law.

464        C.     PAULA WHITE IS JOINTLY LIABLE FOR DAMAGES

465        Discovery revealed that on January 29, 2012, Paula White's fellow mega-church

466    preacher in Atlanta, Georgia was wrapped in a Torah Scroll, (Exh. 19 – Denver Post),

467    which sparked outrage in the Jewish, and Christian communities. Ms. White – seeing

468    the writing on the wall, and what was coming down the pike – immediately set out to

469    remove a video of herself being wrapped in a Torah Scroll. (Exh. 2, Clip 1). The very

470    next day on January 30, 2012, Ms. White sent (or authorized) a DMCA takedown

471    notification to You Tube requesting that the videos on Plaintiff's channel be removed,

472    falsely claiming copyright infringement. (Exh. 20). On January 31, 2012, You Tube

473    refused to remove the videos due to inadequate information, and because the claim

474    appeared to be fraudulent. (Exh. 7). On January 31, 2012, a video of the Atlanta preacher

475    being wrapped in the Torah Scroll was uploaded to You Tube (Exh. 2, Clip 44; Exh. 27

476    on Thumb Drive (Exh. 2)).

477        As anticipated, on February 4, 2012, Ms. White became the subject of discussion

478    as having been wrapped in a Torah Scroll by the same man who wrapped the Atlanta

479    preacher in the scroll. (Exh. 21 – Florida Courier). On the morning of February 5, 2012,

480    Ms. White categorically, and unequivocally denied being wrapped in a Torah Scroll, and

481    threatened to falsely sue Don Miller's guest speaker for defamation.  On the evening of

482    February 5, 2012, You Tube disabled the videos, terminated Plaintiffs' channel, and sent

483    Plaintiff a DMCA takedown notice on February 6, 2012 (Exh. 22).  Ms. White authorized

484    the false copyright infringement claim in an effort to get rid of the evidence of herself

485    being wrapped in a Torah Scroll. (Exh. 2, Clip 1).  However, she was too late; the guest

486    speaker produced a copy of the video which he had downloaded from Plaintiff's You

487    Tube channel, then Ms. White feigned amnesia, claiming she had forgotten all about

488    being wrapped in a scroll, because it had been so long ago, even though 5 days earlier she

489    tried to get rid of the scroll-wrapping video.

490         Furthermore, almost all of the videos that were the subject of DMCA takedowns

491    contained content depicting Ms. White. See *Brave New Films 501(c)(4) v. Weiner*, 626 F.

492    *Supp. 2d 1013, *1016 1. and [3] (N.D. Cal. Apr. 15, 2009)*:

493             Savage argues that he should not be named as a defendant because
494             Brave New Films <u>does not allege any relevant acts or omissions by</u>
495             <u>Savage. ...[A]lmost all of the videos that were the subject of the</u>
496             <u>September 2008 appear to contain content from the Michael Savage</u>
497             <u>Show</u>... [underline added].

498

499         Ms. White was not a named party in the copyright action, but she was a party to

500    the malicious prosecution action. *EEOC v. Pemco, Aeroplex, Inc.*, 383 F.3d 1280, *1286

501    (11th Cir.2004) (citing *Hansberry*, 311 U.S. at 41-43, 61 S.Ct. at 117-19) ("Privity is a

502    flexible term, comprising several different types of relationships and generally applying

503    when a person, although not a party, has his interests adequately represented by someone

504    with the same interests who is a party.").  An individual was in privity with a corporation

505    where he "had complete control over the prior litigation as the Companies' president and

506    sole shareholder." _Griswold v. Cnty. of Hillsborough,_ 598 F.3d 1289, *1293 (11th Cir.

507    2010).

508          Moreover, Ms. White publicly acknowledged that NDCC bylaws give her

509    complete authority, and if a lawsuit was filed – even if she did not know about it – she is

510    still responsible as president of the corporation. (Exh. 2, Clips 48, 49, 50, 51). Further,

511    Ms. White gave the final approval on all copyright transactions. (Exh. 9, Pg. 27, Lns.16-

512    22; Exh. 23, Pg. 108, Lns. 11-18).

513          D.    SUFFICIENT EVIDENCE WARRANTS PUNITIVE DAMAGES
514

515          There is sufficient record evidence demonstrating that Defendants' actions were

516    willful, malicious, deceptive, fraudulent and intentional, which warrants punitive

517    damages. Defendant White claims that her use of the word "enemy" refers only to Satan.

518    Many preachers _do_ refer to Satan as the enemy, but Ms. White also frequently refers to

519    _persons_ as satan, devil, and enemy as well. (Exh. 2, Clips 7-23; Exh. 23, P. 34, Lns 1-25).

520          In contesting Plaintiff's entitlement to punitive damages, Defendants rely on the

521    Court's Order and Opinion (Doc. 264) from a previous proceeding – _Johnson I_ – which is

522    inadmissible hearsay, which cannot be considered in this case. See _U.S. Steel, LLC v._

523    _Tieco, Inc.,_ 261 F. 3d 1275, *1287 (11th Cir. 2001):

524                    [H]earsay is disfavored because it is not subject to the oath, the
525                    rigors of cross-examination, or the first-hand scrutiny of the jury.
526                    See _United States v. Parry,_ 649 F.2d 292, 294-95 (5th Cir. 1981)
527                    [12] (citing McCormick on Evidence §245 (2d ed. 1972). ... As the
528                    Fourth Circuit has stated, "[J]udicial findings of fact present a rare
529                    case where, by virtue of their having been made by a judge, they
530                    would likely be given undue weight by the jury, thus creating a
531                    serious danger of unfair prejudice." _Nipper,_ 7 F.3d at 418 (internal
532                    quotations omitted).
533

534    III.    DEFENDANTS' AFFIRMATIVE DEFENSES FAIL AS A MATTER OF LAW

535  Affirmative defenses are subject to the same general pleading
536  standards of complaints.  There must be sufficient facts pleaded to
537  show relief and "more than labels and conclusions…a formulaic
538  recitation of elements of a cause of action will not do.". *Bell Atl.*
539  *Corp. v. Twombly, 550 U.S. 544, 555 (2007)*."
540
541  *Vignoli v. Clifton Apartments, Inc.* 2013 WL 12093480 at *1 (S.D. Fla. Oct. 31, 2013).

542  Affirmative Defenses Nos. 1-10,12-19,23,24 are denials which should be

543  dismissed. *In re Rawson Food Service, Inc.*, 846 F. 2d 1343, 1349 (11th Cir. 1988).

544  Affirmative Defenses No. 21, 22 should be dismissed. "… '[S]et-off is not an affirmative

545  defense to be considered by the jury but is a determination regarding damages to be made

546  by the court after the verdict is rendered.'" (*KMS Rest. Corp v. Wendy's Int'l, Inc.*, 194

547  Fed. App'x 591, *598 (11th Cir. 2006) (quoting *Felgenhauer v. Bonds*, 891 So. 2d 1043,

548  1045 (Fla. Dist. Ct. App. 2004).  Aff. Defense No. 20 – mitigation is inapplicable.

549  IV.  CONCLUSION

550  Defendants failed to present sufficient evidence to support their Motion for

551  Summary Judgment, and the evidence in this case is so one-sided that Plaintiff must

552  prevail as a matter of law. Punitive Damages are warranted pursuant to §768.73(1)(c);

553  §768.72(2).

554  WHEREFORE, in the interest of justice, Plaintiff respectfully requests that the

555  Court enter summary judgment in favor of Plaintiff on all claims.

556  Dated: November 30, 2018                Respectfully submitted:

557
558                                         Shirley Jn Johnson
559                                         PRO SE LITIGANT
560                                         theremnantsjnj@yahoo.com
561                                         P.O. Box 58818
562                                         Seattle, WA 98138
563                                         Telephone:  253-846-6805

-20-

564                                            <u>VERIFICATION</u>

565          Under penalty of perjury, I declare that I have read the foregoing Plaintiff's

566    Verified Motion to File Reply to Defendants' Answer and Affirmative Defenses to

567    Plaintiff's Verified Amended Complaint and the facts alleged therein are true and correct

568    to the best of my knowledge and belief, except as to matters alleged on information and

569    belief, and, as to those, I believe them to be true.

570                                              By: _____
571                                              Shirley Jn Johnson
572
573

574          On this ___1st___ day of DECEMBER 2018, before me personally

575    appeared SHIRLEY JN JOHNSON who ____is personally known to me or __X__ who

576    produced a WASHINGTON driver's license bearing her name and photograph as

577    identification, and who executed this document.

578    _____   Commission Expires:
579    Notary Public                               11/9/20
580    Brianna Schuster

BRIANNA SCHUSTER
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
NOVEMBER 9, 2020

581
582                                      <u>CERTIFICATE OF SERVICE</u>

583          I HEREBY CERTIFY that on, December 1, 2018, this Plaintiff's Verified

584    Response and Memorandum of Law in Opposition to Defendants' Motion for Final

585    Summary Judgment was sent via Express U.S. Mail to be filed with the Clerk of the

586    Court and a true and correct copy was sent via Priority U.S. Mail to Krista Cammack and

587    Clay H. Coward  - Wicker, Smith, O'Hara, McCoy & Ford, PA – P. O. Box 2753,

588    Orlando, FL 32802-2753.

589
590                                              Shirley Jn Johnson