UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SHIRLEY JN JOHNSON, individual,   CASE NO. 6:17-cv-710-Orl-37DCI

    Plaintiff,

v.

NEW DESTINY CHRISTIAN CENTER CHURCH, INC., Florida not for profit corporation a/k/a Paula White Ministries, PAULA MICHELLE WHITE, individually and in her official capacity as President, Director and Senior Pastor of New Destiny Christian Center Church, Inc. a/k/a PAULA MICHELLE CAIN,

    Defendants.
_____/

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR FINAL SUMMARY JUDGMENT

Defendants NEW DESTINY CHRISTIAN CENTER CHURCH, INC. and PAULA MICHELLE WHITE, by and through their undersigned counsel, hereby file their Reply Memorandum in Support of their Motion for Final Summary Judgment and in support thereof state as follows:

**I.  Plaintiff's Abuse of Process Claim is Preempted by 17 U.S.C. § 512[1]**

An abuse of process claim involves the use of the civil process against another to accomplish a purpose for which it was not designed. Scozari v. Barone, 546 So. 2d 750 (Fla. 3d DCA 1989). Here, Plaintiff has focused her abuse of process allegations to those surrounding Defendants' continued prosecution of a copyright action[2] and alleged use of the judicial system

---

[1] To the extent Plaintiff attempts to argue that, because Defendants are not internet providers, they are not afforded protections under the Digital Millennium Copyright Act ("DMCA"), such argument cannot succeed. Plaintiff cannot claim that the DMCA is not applicable, when she – herself – brought this action relying on the DMCA. (See Doc. # 31)

[2] See *Paula White Ministries v. Shirley Jn Johnson*, Case No. 6:14-cv-497-ORL-31DAB.

1

for an improper purpose of obtaining the permanent termination of Plaintiff's channel by YouTube. (Doc. # 31 at 11-12). Specifically, she has argued that following the 17 U.S.C. § 512(f) misrepresentations, PWM/NDCC "continued the previous fabricated copyright infringement action against Plaintiff with the ulterior motive of using (or misusing) the Judicial System to intimidate, punish, shame, harass and attempt to extort millions of dollars from Plaintiff." (Id. at ¶ 58).

As demonstrated by her deposition testimony, Plaintiff's abuse of process claim is based on the same conduct governed by § 512:

> Q: And – and so – as you said, the basis of your abuse of process claim is that the copyright infringement lawsuit was continued for the purposes of continuing the misrepresentation to Youtube under section 512(f) so that Youtube would take the videos down?
> A: Correct.
> Q: Okay.
> A: Correct. And it was done basically to – to up – like I said, to extort money because they wanted to add to – they claimed they had substantial damage.

(Doc. # 66-1 at 190:10-20). Now, however, in an attempt to avoid summary judgment on her abuse of process claim, on the basis of preemption, Plaintiff claims:

> The abuse of a judicial process occurred when Defendants filed, and continued, a SLAPP (sham) copyright infringement lawsuit in 2014, in which every allegation against Plaintiff was false.
> . . .
> Filing a SLAPP (sham) lawsuit in 2014 with an ulterior, improper motive, and without probable cause did violate a judicial process.
> * * *
> [T]he initial abuse of process occurred when Defendants filed, and continued, the bogus copyright lawsuit on March 27, 2014 through January 22, 2015, with the ulterior motive of retaliating, intimidating, harassing, punishing, and extorting millions of dollars from Plaintiff.

(Doc. # 77 at 5, 7). However, the validity of Plaintiff's current argument has already been heard, and decided, by this Court. See Johnson I.[3]

---

[3] See *Shirley Jn Johnson v. New Destiny Christian Center Church, Inc., et al*, Case No. 6:15-cv-1698-ORL37-GJK.

2

In Johnson I, Plaintiff claimed that the defendants "brought the previous action with the ulterior motive of using (or misusing) the Judicial System to intimidate, punish, shame, harass and attempt to extort millions of dollars from Plaintiff." (Johnson I, Doc. # 76 at ¶ 77). Therefore, to the extent Plaintiff contends that her abuse of process claim is actually premised on Defendants filing the copyright action, her claim is subject to dismissal on the basis of *res judiciata*. See Kruse, Inc. v. Aqua Sun Investments, Inc., No. 6:07-cv-1367ORL19UAM, 2008 WL 276030, at *3 (M.D. Fla. Jan. 31, 2008)(noting "[u]nder the doctrine of *res judicata,* a judgment on the merits of a controversy is conclusive as to the parties and their privies and will bar a subsequent action between the same parties on the same cause of action.")(internal quotations omitted).

Therefore, the only remaining plausible claim for abuse of process in this action could be premised on Plaintiff's contention that Defendants used the Copyright Action to procure the permanent deletion of her YouTube channel and videos. (See Doc. # 30 at 10-12). However, her limited abuse of process claim is preempted by the DMCA and her § 512(f) claim. See Online Policy Grp. v. Diebold, Inc., 337 F. Supp. 2d 1195, 1204 (N.D. Cal. 2004)(If adherence to the DMCA's provisions simultaneously subjects the copyright holder to state tort law liability, there is an irreconcilable conflict between state and federal law).

Plaintiff relies upon Amaretto Ranch Breedables, LLC v. Ozimals, Inc., No. C 10-05696 CRB, 2011 WL 2690437, at *4–5 (N.D. Cal. July 8, 2011) to support her argument that preemption does not apply. However, Amaretto Ranch supports Defendants' position:

> Amaretto has plainly alleged that Ozimals sent Takedown Notifications within the ambit of the DMCA. Amaretto's DMCA claim was dismissed not because Ozimals's conduct fell outside the ambit of the DMCA but because Congress decided that to be liable for misrepresentation under section 512(f) an actual takedown had to occur. . .
>
> . . . But whether state law is preempted does not turn on whether, if it is, the plaintiff will be left without a remedy.

3

> Rather, the preemption analysis turns on whether federal law conflicts with state law and/or occupies a particular field. **Such is the case here because DMCA Takedown Notifications are a creature of federal law, and there is a specific federal remedy for their misuse**.
>
> * * *
>
> Therefore, Amaretto's interference with contract claim . . . is preempted, as is any other state law claim to the extent such claim is based on Ozimals's DMCA Takedown Notifications.

Id. at *4–5 (internal citations omitted)(emphasis added). Here, Plaintiff alleges that because Defendants filed suit, as required by § 512(g) following receipt of Plaintiff's counter-notification, her videos were taken down/removed. Accordingly, as in Amaretto Ranch, Plaintiff's state law abuse of process claim is preempted as it falls within the ambit of § 512(f).

Plaintiff has testified that after PWM filed the Copyright Action, PWM sent additional Takedown Notifications to YouTube in order to bring Plaintiff's YouTube channel down during the Copyright Action. (Doc. # 66-1 at 190:10-17). Such testimony is consistent with Plaintiff's allegations that PWM used Takedown Notifications "for an improper purpose of obtaining the permanent termination of Plaintiff's" YouTube channel, and that the Takedown Notification was used "with the ulterior motive of removing evidence" of certain activities. (Doc. # 31 at ¶ 56). Plaintiff has also confirmed that her abuse of process claim would have been part of Johnson I, "if [she] had known what [she] was doing." (Doc. # 66-1 at 191:8-15). Similarly, Plaintiff includes certain allegations in her abuse of process claim that relate specifically to the subject matter of Johnson I. (Doc. # 31 at 11-12).

Even if the Court determines that Plaintiff's abuse of process claim is not preempted by the DMCA and her claim under § 512(f), her abuse of process claim must still fail. Her abuse of process claim is premised on the argument that Defendants improperly used the judicial system – in filing the Copyright Action – in order to have her YouTube videos taken down. However, based

on the arguments below, the record evidence shows that the Takedown Notifications – or the subsequent litigation – were not done maliciously.

## II.     **Defendants Did Not Act with Malice and Properly Considered Fair Use**

Plaintiff continues to misapprehend that Defendants had to register their material with the United States Copyright Office before sending its Takedown Notifications and that fair use had to be considered before the Takedown Notifications were sent. (Doc. # 77 at 3, 7-17). Moreover, Plaintiff believes fair use can be established by only one criteria having been met, when instead it is a defense to be established by having all the factors considered together. (Id. at 12). Yet, even if Plaintiff is correct that fair use had to be taken into account, when the Takedown Notifications were issued, the relevant inquiry for a § 512(f) case is whether the party seeking the Takedown Notification had a *subjective* good faith belief that its copyright was being infringed. Plaintiff has presented no evidence to create a genuine issue of material fact as to the subjective good faith analysis belief reached by Defendants. See Hosseinzadeh v. Klein, 276 F. Supp. 3d 34, 44 (S.D.N.Y. 2017)("A copyright holder is not liable for misrepresentation under the DMCA if they *subjectively* believe the identified material infringes their copyright, even if that belief is ultimately mistaken.")(emphasis added).

Plaintiff's continued argument that "NDCC/PWM's videos are unregistered, therefore their DCMA copyright takedown notifications are invalid" (Doc. # 77 at 3) is patently incorrect. "Registration is not a condition of copyright protection." 17 U.S.C. § 408(a). Rather, copyright protection inures at "the moment an original idea leaves the mind and finds expression in a tangible medium, be it words on a page, images on a screen, or paint on a canvas." Big Cat Rescue Corp. v. Big Cat Rescue Entm't Grp., No. 8:11-cv-2014-JDW-TBM, 2013 WL 12158980, at *2 (M.D. Fla. Jan 15, 2013)(internal citations omitted).

5

Moreover, the fair use doctrine is an affirmative defense that can excuse what would otherwise be an infringing use of copyrighted material. See Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1239 (11th Cir. 2010)("determining that the "fair use of copyrighted work is an affirmative defense and should be pleaded as such."). In order to make this determination, courts must carefully evaluate the facts of the case at hand in light of the *four considerations* set forth in 17 U.S.C. § 107. See 17 U.S.C. § 107. [4]

Prior to September 14, 2015, the date of the Ninth Circuit's opinion in Lenz v. Universal Music Corp., 801 F.3d 1126 (9th Cir. 2015), senders of Takedown Notifications were not required to consider fair use for purposes of determining whether the "use of the material in the manner complained of is not authorized by . . . the law." It was not until September 2015 that the Ninth Circuit held that fair use was an authorization under the law, and thus, fair use had to be considered before sending a Takedown Notification in order to state that "the complaining party has a good faith belief that the use of the material in the manner complained of is *not authorized by . . . the law.*" Lenz, 815 F.3d at 1151-53 (emphasis supplied); see Stern v. Lavender, 319 F. Supp. 3d 650, 684 (S.D.N.Y. 2018)(granting summary judgment on the Lavender's 512(f) counterclaim upon finding that the evidence "uniformly supported plaintiffs' defense of good faith.").

As in Stern, Plaintiff has not supplied a factual basis on which to find that Defendants, in submitting the Takedown Notifications, made a knowing material misrepresentation and did not have the subjective good faith belief that the use of the material in the manner complained of was not authorized by law. Rather, in her Response, Plaintiff makes generalized allegations, without any evidentiary support, to combat the *subjective* good faith belief of Ms. Braeley, Mr. Knight, and Mr. Sadaka. (See generally Doc. # 77). For example, Plaintiff states: "There is absolutely no

---

[4] Prior to Lenz, courts did not consider fair use, which is an affirmative defense, as part of their analysis.

way that Mr. Knight could have had a subjective good faith belief that Plaintiff's video was infringing" (Id. at 11). However, the subjective good faith belief of Mr. Knight is detailed in his Affidavit, attached to Defendants' Motion. (See Doc. # 75-1).

Upon understanding PWM's options as it relates to infringing videos on YouTube, Mr. Knight determined that he needed to consider fair use before accusing someone of infringing PWM's videos. (Doc. # 75-1 at ¶ 14). Thus, as PWM started to enforce rights in its videos in early 2012, Mr. Knight undertook a fair use analysis for each of the videos that PWM accused individuals, not just Plaintiff, of infringing. (Id. at ¶ 15). As detailed in his Affidavit, in Mr. Knight's mind, three of the four fair use factors weighed against a finding of fair use as to Plaintiff's videos. (See id. at ¶¶ 19-20).

While it is possible that Plaintiff or the Court could reach a different conclusion, what is important is that Ms. Braeley, Mr. Knight, and Mr. Sadaka formed a *subjective* good faith belief. Plaintiff has no evidence – *other than her own subjective belief* – to contradict Mr. Knight's testimony. Plaintiff has simply reincorporated her Response into an affidavit, in an attempt to create record evidence to refute summary judgment. However, Plaintiff's subjective belief as to the fair use analysis is not what is relevant under Lenz. Rather, under Lenz, what is relevant is whether "the complaining party has a good faith belief that the use of the material in the manner complained of is *not authorized by . . . the law.*" Lenz, 815 F.3d at 1151-53 (emphasis supplied).

Here, the uncontroverted record evidence makes clear that Mr. Knight, Mr. Sadaka, and Ms. Braeley each considered the fair use factors prior to sending the Takedown Notifications at issue. (See Doc. # 75-1, 75-3, 75-5). Upon due consideration, each concluded that Plaintiff's use of PWM's videos was not fair use. (Id.). Plaintiff has not come forward with any independent evidence establishing that Ms. Braeley, Mr. Knight, or Mr. Sadaka failed to undertake a fair use

7

analysis and/or did not have a subjective good faith belief prior to submitting any of the Takedown Notifications at issue. Indeed, Plaintiff indicated at her deposition that it was *simply her belief* that each of these individuals either failed to undertake a fair use analysis or turned a blind eye to the fair use issue because they did not reach the same conclusion as she had when deciding to copy and use portions of PWM's videos. (Doc. # 66-1 at 97:7-15). As such, Defendants are entitled to summary judgment on Plaintiff's § 512(f) claim as a matter of law.

### III. Defendants Did Not Attempt to Register Plaintiff's Youtube Videos

Plaintiff continues to suggest that Defendants engaged in "Fraudulent Attempt to Register Plaintiff's YouTube Video." (Doc. # 77 at 14). However, the document that Plaintiff relies upon for such argument is a document the Court sends to the United States Copyright Office, as a matter of course when a copyright infringement lawsuit is filed. (See Paula White Ministries v. Shirley Jn Johnson, Case No. 6:14-cv-497-ORL-31-DAB, Doc. # 2).

### IV. Defendant White Not Involved in Takedown Process

As the testimony demonstrated in Johnson I, Defendant White testified that she delegated the responsibility of dealing with YouTube and the presentation of PWM to her son, Mr. Knight, who served as operations manager of PWM, along with Doug Shackelford, who is the general manager. (Doc. # 256 at 108:11-16). Moreover, Defendant White testified that she was generally aware of and provided authority for the filing of the Copyright Action, but delegated the details concerning that to Mr. Knight. (Id. at 107:10-15; 108:11-18; see also Johnson I, Doc. # 264 at 5, 7).

Defendant White had no direct involvement with issues involving YouTube and as a result, had no direct involvement in the relevant Takedown Notifications, as she delegated such tasks to Mr. Knight. Furthermore, Defendant White had minimal involvement in the Copyright Action,

8

which is the basis of Plaintiff's abuse of process claim. Accordingly, as she was not directly involved in the actions giving rise to Plaintiff's claims, Defendant White cannot be held personally liable for Plaintiff's § 512(f) and abuse of process claims.

**V.      Insufficient Evidence for Plaintiff's Punitive Damages Claim to Proceed to Trial**

Plaintiff seeks punitive damages; however, based upon the section's express language, punitive damages are not recoverable under § 512(f). (See Doc. ## 31, 49-5). The express language provides that the misrepresenting party is liable for damages incurred by the alleged infringer. 17 U.S.C. § 512(f). As set forth in Defendants' Motion, if a copyright infringer is not liable for punitive damages under 17 U.S.C. § 504, a party making a misrepresentation under § 512(f) should similarly not be liable for punitive damages, particularly based upon the express language of § 512(f) that only makes a misrepresenting party liable for damages that the alleged infringer *incurred* as a result of the violation of the statute. See Calio v. Sofa Express, Inc., 368 F. Supp. 2d 1290, 1291-92 (M.D. Fla. 2005)("based on the express language of the 17 U.S.C. § 504(a), which sets forth the remedies for copyright infringement, and the prevailing case law interpreting this language, this Court finds that punitive damages are not a remedy available under the Copyright Act.").

As it relates to her abuse of process claim[5] (and in the event the Court finds punitive damages available for a § 512(f) claim), Plaintiff has failed to demonstrate her entitlement to punitive damage, as Plaintiff has failed to overcome Defendants' evidence that they did not act in a malicious, wanton, or willful manner. (See Doc. # 75-1, Doc. # 75-3, Doc. # 75-5).

Plaintiff contends that reliance on the Court's Memorandum Opinion and Order – which found "insufficient evidence to award Johnson punitive damages" (Johnson I, Doc. # 264 at 17) –

---

[5] Assuming that the Court finds that Plaintiff's abuse of process claim is not preempted as Defendants argued, *supra*.

– is improper as it is inadmissible hearsay. (Doc. # 77 at 19)(citing U.S. Steel, LLC, v. Tieco, Inc., 261 F.3d 1275, 1287 (11th Cir. 2001)). As noted by the court in Johnson v. Clark, No. 2:03-cv-490FTM33DNF, 2006 WL 289107, at *1 (M.D. Fla. Feb. 7, 2006), U.S. Steel presented a "unique factual issue," as the hearsay in the court's opinion was prepared entirely by counsel, which in effect, "permitted counsel to testify on his client's behalf, without being cross-examined." However, that is not what occurred in Johnson I. The factual determination occurred after this Court had the opportunity to preside over a two-day bench trial, consider the evidence submitted at trial, and weigh the evidence appropriately.

Nonetheless, even if this Court is not to consider its determination in Johnson I, Plaintiff has not presented any record evidence to create a genuine issue of material fact as to Plaintiff's entitlement to punitive damages, which would allow her to proceed to trial on such claim.

**VI.     Plaintiff's Additional Request for Relief is Improper**

To the extent Plaintiff requests relief in her Response, other than denial of Defendants' Motion, doing so is improper and should be disregarded by the Court. Pursuant to Local Rule 3.01, requests for relief in any form must comply with the requirements of the rule, and "the movant shall include a concise statement of the precise relief requested, a statement of the basis for the request, and a memorandum of legal authority in support of the request." At this time, there is no Motion before the Court regarding the additional relief sought by Plaintiff.

WHEREFORE for the reasons stated herein, as well as in their Motion for Final Summary Judgment, Defendants respectfully request the Court enter final summary judgment in their favor and against Plaintiff as to her § 512(f) and abuse of process claim. In the event the Court declines to grant summary judgment as to liability, Defendants respectfully request the Court enter partial summary judgment as to Plaintiff's request for punitive damages.

Dated:  December 17, 2018

                    Respectfully submitted,

*/s/ Clay H. Coward*_____
Richards H. Ford, Esquire (0288391)(Trial Counsel)
RFord@wickersmith.com
Clay H. Coward, Esquire (379522)
CCoward@wickersmith.com
Krista N. Cammack, Esquire (0104718)
KCammack@wickersmith.com
WICKER SMITH O'HARA MCCOY & FORD, P.A.
390 N. Orange Ave., Suite 1000
Orlando, FL 32801
Telephone:       (407) 843-3939
Facsimile:        (407) 649-8118
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 17, 2018, I electronically filed the foregoing with the Clerk of the Court by using the ECF system, which will send a notice of electronic filing to all counsel of record. I further certify that a true and correct copy of the foregoing has been furnished via U.S. Mail to:

**Shirley Jn Johnson**
P.O. Box 58818
Seattle, WA 98138
*Pro Se*

                    */s/ Clay H. Coward*
                    Clay H. Coward, Esquire