UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SHIRLEY JN JOHNSON,

      Plaintiff,

v.                             Case No. 6:17-cv-710-Orl-37DCI

NEW DESTINY CHRISTIAN CENTER
CHURCH, INC.; and PAULA
MICHELLE WHITE,

      Defendants.

_____

## ORDER

Before the Court is Defendants' motion for summary judgment (Doc. 75 ("**Motion**")), Plaintiff's response (Doc. 77), and Defendants' reply (Doc. 78). For the following reasons, the Court grants the Motion.

## I.    BACKGROUND

This action centers on a series of Takedown Notifications in 2012 and 2013 directed to videos on Plaintiff's YouTube channel and whether Defendants wrongfully sought to remove Plaintiff's videos for containing their copyrighted material.[1] (Doc. 31, ¶¶ 12–29.) Plaintiff operates a website and YouTube channel where she posts videos that include self-recorded portions of Defendant Paula Michelle White's sermons. (Doc. 66-1, pp.

---

[1] The Court assumes the reader's familiarity with the 2014 **Copyright Action**, *Paula White Ministries v. Shirley Jn Johnson*, Case No. 6:14-cv-497-Orl-31DAB, and the 2015 **Malicious Prosecution Action**, *Johnson v. New Destiny Christian Ctr. Church, Inc.*, Case No. 6:15-cv-1698-Orl-37GJK.

10:14–11:19, 12:23–13:11.) At all relevant times, these sermons were distributed online and on television by the entity Paula White Ministries ("**PWM**").[2] (Doc. 75-1, ¶¶ 2–4.)

After PWM discovered Plaintiff's YouTube channel and videos containing PWM's intellectual property, PWM set out to determine whether the use was infringing. (*Id.* ¶¶ 10–19.) To that end, PWM's then-General Manager, Bradley Knight, viewed videos posted by Plaintiff and evaluated whether they constituted "fair use." (*Id.* ¶¶ 14–19.) By January 2012, Mr. Knight "formed a good faith belief that her uses were not fair uses, as she violated [three] tenants of fair use." (*Id.* ¶ 19.) Mr. Knight then consulted with one of PWM's attorneys to determine what next steps could be taken, as PWM had not obtained copyright registrations on the videos at that time. (*Id.* ¶ 23.) Mr. Knight learned that PWM didn't need to obtain a copyright registration to send a Takedown Notification to YouTube under the Digital Millennium Copyright Act ("**DMCA**"), so he directed PWM employee Antonio Taylor to submit a series of Takedown Notices on behalf of PWM referencing Plaintiff's videos to YouTube. (*Id.* ¶¶ 24–25.) Mr. Taylor submitted the requests on January 30, 2012. (*Id.* at 8–15.) YouTube responded by asking PWM for more information before complying with the Takedown Notifications. (*Id.* at 16–21.) PWM responded by sending YouTube a cease and desist letter on February 2; YouTube then removed the content on February 6, 2012. (*Id.* at 22–31.)

---

[2] The Court has previously detailed Defendants' corporate history: Defendant New Destiny Christian Center, Inc. ("**NDCC**") now owns PWM's trade name; Defendant Paula Michelle White is currently Senior Pastor-President of NDCC. *Malicious Prosecution Action*, Doc. 213, p. 5. For sake of clarity, this Order attributes PWM as the relevant actor for the Takedown Notifications and Copyright Action discussed herein.

YouTube notified Plaintiff on February 6, 2012 that her channel was terminated. (Doc. 75-4.) She responded by writing YouTube a letter asserting that her videos "were for nonprofit educational purposes . . . in accordance with . . . the doctrine of fair use." (*Id.* at 1.) She asked that her channel and then-thirty-seven videos be restored. (*Id.*) The restoration process took several months, but her videos were put back up in May 2012. (Doc. 66-1, p. 145:9–23.) Later, in June 2012, PWM registered the copyright for "Paula White Ministries Sermons 2010-2011." (Doc. 75-1, ¶ 5.)

After this initial series of Takedown Notifications, Mr. Knight started consulting with attorney Thomas Sadaka at Nejame Law about Plaintiff's use of PWM's intellectual property. (*Id.* ¶¶ 28–29.) Mr. Knight provided Mr. Sadaka with materials to determine if there was a reasonable basis for a copyright infringement claim against Plaintiff. (*Id.*) Nothing happened right away, but sometime in 2013, Mr. Sadaka sent a Takedown Notification to YouTube for one of Plaintiff's videos on behalf of PWM. (*Id.* at 33–34.) Plaintiff submitted a Counter-Notification, so YouTube told Mr. Sadaka he had "ten days within which to notify [YouTube] that [he] had filed an action seeking a court order to restrain the counter-notifier's allegedly infringing activity." (*Id.* at 34.) As Mr. Sadaka did not act within those ten days, YouTube told him they could no longer provide assistance and he would need to sort things out directly with Plaintiff. (*Id.*)

Then, on March 27, 2014, Mr. Sadaka, on behalf of PWM, initiated suit against Plaintiff for copyright infringement. *See Paula White Ministries v. Shirley Jn Johnson*, Case No. 6:14-cv-497-Orl-31DAB, Doc. 1 ("**Copyright Action**"). Following this, Mr. Sadaka sent YouTube a copy of the Copyright Action's Complaint and requested it take down

Plaintiff's infringing videos. (Doc. 75-1, p. 32.) YouTube took no action, so Mr. Taylor followed up by e-mailing YouTube on April 29, 2014 to again request it take down Plaintiff's videos, totaling seventy-six at the time. (*Id.* ¶¶ 33–34; *id.* at 43–45.) YouTube disabled Plaintiff's videos on May 2, 2014 (Doc. 31-8), and Plaintiff sent a Counter-Notification (Doc. 31-9). Yet because of the lawsuit, YouTube sent Plaintiff an e-mail on June 4, 2014 that it could not restore Plaintiff's videos. (Doc. 31-10.)

Later that month, Mr. Knight noticed another video on Plaintiff's channel that he believed to be infringing PWM's copyrighted material, so sent YouTube another Takedown Notification. (Doc. 75-1, ¶ 35; *id.* at 46.) YouTube responded by asking follow-up questions regarding the fair use factors (*id.* at 47); Mr. Knight replied by maintaining that the video was not protected by fair use (*id.* at 48–49). YouTube then removed the content on July 1, 2014. (*Id.* at 49.) Because this was "the third notification [YouTube had] received alleging copyright infringement in one of [Plaintiff's] postings," YouTube terminated Plaintiff's account. (Doc. 31-11.)

Meanwhile, after the Copyright Action progressed for a while, PWM decided to voluntarily dismiss its claims against Plaintiff on January 13, 2015. Copyright Action, Doc. 37. After the Copyright Action concluded, Plaintiff notified YouTube, and it restored her channel and videos on February 10, 2015. (Doc. 66-1, pp. 109:18–110:23.) That same month, Mr. Knight reviewed another video that Plaintiff had recently posted. (Doc. 75-1, ¶ 37.) He asked for guidance on whether the video was infringing from another Nejame Law attorney, Vanessa Braeley. (*Id.* ¶ 38.) After she reviewed the video, she submitted a Takedown Notification to YouTube on behalf of PWM on March 6, 2015. (*Id.* ¶ 39.)

YouTube took down the video, Plaintiff sent a Counter-Notification on April 22, 2015, and the video was restored. (Doc. 31-14.)

A final Takedown Notification was sent around May 20, 2015 by Mr. Knight to YouTube concerning one video. (Doc. 75-1, ¶ 40.) Prior to sending the request, Mr. Knight had reviewed the video, considered the fair use factors, and formed a good faith belief that Plaintiff's use of PWM's material was not fair use. (*Id.* ¶ 41.) Plaintiff sent a Counter-Notification on May 22, 2015 (Doc. 31-15), and YouTube restored the video on June 5, 2015 (Doc. 75-6).

After all of this, Plaintiff, proceeding *pro se*, initiated suit against Defendants and two other entities for malicious prosecution based on the Copyright Action on October 8, 2015. *See* Malicious Prosecution Action, Doc. 1. In the *ad damnum* clause of her Third Amended Complaint, Plaintiff "request[ed] economic, non-economic, and nominal damages pursuant to 17 U.S.C. § 512(f)." *Id.* Doc. 131, p. 8. She also alleged a violation of "her rights under the First Amendment to the U.S. Constitution by filing the Copyright Action and making numerous false copyright infringement complaints to YouTube, which caused the removal of videos from her channel." *Id.* On March 23, 2017, the Court dismissed Plaintiff's purported federal claims under § 512(f) and the First Amendment without prejudice but denied her leave to file a fourth amended complaint due to the late stage of the proceedings and the Court's belief that she had just intended to assert a claim for malicious prosecution. *Id.* at 8–11, 23.

So Plaintiff filed this case, again *pro se*, bringing claims for material misrepresentation under 17 U.S.C. § 512(f) and abuse of process. (Doc. 1.) After the Court

whittled down Plaintiff's bases for these claims (*see* Doc. 30), this case has proceeded on Plaintiff's § 512(f) misrepresentation claim as to the Takedown Notifications and the abuse of process claim based on Plaintiff's allegation that Defendants continued the Copyright Action to procure the deletion of Plaintiff's YouTube channel. (Doc. 31.) Now, Defendants have moved for summary judgment. (Doc. 75.) Briefing complete (Docs. 77, 78), the matter is ripe.

## II.   LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). As to issues for which the movant would bear the burden of proof at trial, the "movant must affirmatively show the absence of a genuine issue of material fact and support its motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party on all of the essential elements of its case." *Landolfi v. City of Melbourne, Fla.*, 515 F. App'x 832, 834 (11th Cir. 2012) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)). As to issues for which the non-movant would bear the burden of proof at trial, the movant has two options: (1) the movant may simply point out an absence of evidence to support the non-moving party's case; or (2) the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *U.S. v. Four Parcels of Real Prop. in Green & Tuscaloosa Ctys.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (citing *Celotex Corp.*, 477 U.S. at 325).

"The burden then shifts to the non-moving party, who must go beyond the

pleadings and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick*, 2 F.3d at 1115–17). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248) (1986)).

The Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). However, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

## III.   DISCUSSION

As it stands, Plaintiff's claims rest on the same underlying issues: the legitimacy of the Takedown Notifications PWM sent to YouTube between 2012 and 2015. Plaintiff maintains that these notices were "false" from the start based on her contention that PWM and its attorneys did not have a subjective good faith belief when they contacted YouTube to remove Plaintiff's videos. (Doc. 77, p. 8.) Yet Defendants move for summary judgment based on the record evidence that the Takedown Notifications and Copyright Action were founded on Defendants' subjective good faith belief that Plaintiff's videos infringed their copyrighted material. (Doc. 75, pp. 15–22.) With this, Defendants claim that both Plaintiff's 512(f) and abuse of process claims fail. (*Id.*) In turn, Plaintiff argues that Defendants' one-sided evidence should be rejected and summary judgment granted in

her favor. (*See* Doc. 77.) On review, the Court agrees with Defendants.

The DMCA sets forth "a detailed process allowing a copyright owner who observes infringing content on a website like YouTube to have the content taken down." *Big Cat Rescue Corp. v. Big Cat Rescue Entm't Grp.*, No. 8:11-cv-2014-JDW-TBM, 2013 WL 12158980, at *10 (M.D. Fla. Jan. 15, 2013). Section 512(c)(3)(A) outlines the process for submitting a Takedown Notification:

> (A)  To be effective under this subsection, a notification of claimed infringement must be a written communication provided to the designated agent of a service provider that includes substantially the following:
>
>    (i)  A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.
>
>    (ii)  Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.
>
>    (iii)  Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material.
>
>    (iv)  Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.
>
>    (v)  A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.
>
>    (vi)  A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

17 U.S.C. § 512(c)(3)(A)(i)–(vi).[3]

---

[3] Contrary to Plaintiff's argument, the DMCA does not limit the ability to submit

Abusing this takedown process may subject an individual to liability under §

512(f):

> Any person who knowingly materially misrepresents under
> this section – (1) that material or activity is infringing; or (2)
> that material or activity was removed or disabled by mistake
> or misidentification, shall be liable for any damages . . . as the
> result of the service provider relying upon such
> misrepresentation in removing or disabling access to the
> material or activity claimed to be infringing, or in replacing
> the removed material or ceasing to disable access to it.

17 U.S.C. § 512(f). Yet courts have found that "it is a complete defense to a claim under §

512(f) that the party issuing a takedown notice had a subjective good faith belief that the

use in question was 'not authorized.'" *Stern v. Lavender*, 319 F. Supp. 3d 650, 683 (S.D.N.Y.

2018) (citing *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 44 (S.D.N.Y. 2017); then citing *Lenz*

*v. Universal Music Corp.*, 815 F. 3d 1145, 1153 (9th Cir. 2016)). In *Lenz*, the U.S. Court of

Appeals for the Ninth Circuit held that a copyright holder "must consider fair use before

sending a takedown notification," and if the copyright holder "forms a subjective *good*

*faith* belief the allegedly infringing material does not constitute fair use, [the Court is] in

no position to dispute the copyright holder's belief even if [it] would have reached the

opposite conclusion." 815 F.3d at 1154. But summary judgment should be denied, of

course, if the copyright holder "pays lip service to the consideration of fair use by

claiming it formed a good faith belief when there is evidence to the contrary." *Id.*

---

§ 512 Takedown Notifications to registered copyright owners alone. (Doc. 77, p. 3.)
Rather, registration is a precondition to filing a copyright infringement *lawsuit*. 17 U.S.C.
§ 411(a); *Schenck v. Orosz*, No. 3:13-CV-294, 2013 WL 5963557, at *7 (M.D. Tenn. Nov. 7,
2013) (citing *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010)). So registration isn't
an issue here.

(citations omitted).

The evidence before the Court uniformly supports Defendant's good faith defense. And critically here, Plaintiff has not supplied a factual basis on which to find the opposite: that Defendants, in pursuing Takedown Notifications, made a knowing material misrepresentation. As it stands, Defendants' affidavits supply that before PWM sent YouTube takedown requests, Plaintiff's videos were analyzed to determine whether they constituted fair use. (Docs. 75-1, ¶¶ 14–41 (Mr. Knight's affidavit); 75-3, ¶¶ 5–14 (Mr. Sadaka's affidavit); 75-5, ¶¶ 5–11 (Ms. Braeley's affidavit).) Each time, PWM concluded that Plaintiff's videos did not constitute fair use and were infringing copyrighted material. (Doc. 75-1, ¶¶ 19–42.) PWM's correspondence with YouTube confirms this (*Id.* at 8–31, 43–49), as does the 2014 Copyright Action (Doc. 75-3, ¶¶ 15–19).

Plaintiff retorts by offering her version of events, which the Court finds are based exclusively on speculation. (*See* Doc. 66-1, pp. 97:7–102:25, 113:23–118:19, 139:22–144:19 (Plaintiff's deposition).) Although Plaintiff claims certain inaccuracies in PWM's submissions to YouTube (Doc. 77, pp. 8–15), she "has not come forth with competent summary judgment evidence that calls into question [PWM's] good faith belief." *Handshoe v. Perret*, No. 1:15CV382-HSO-JCG, 2018 WL 4374188, at *8–9 (S.D. Miss. Sept. 13, 2018). "Even if [PWM] acted unreasonably and made an unknowing mistake in [its] submission of the online form to YouTube, [Plaintiff] has not presented evidence that tends to demonstrate some knowing misrepresentation on [PWM's] part." *Id.*

Thus, the Court finds that PWM's sending of Takedown Notifications "did not evince bad faith or entail the making of a material misrepresentation." *Stern*, 319 F. Supp.

3d at 684; *see also UMG Recordings, Inc. v. Augusto*, 558 F. Supp. 2d 1055, 1065 (C.D. Cal. 2008). Defendants' Motion is therefore granted as to Plaintiff's § 512(f) claim.

The same goes for Plaintiff's abuse of process claim. For this claim, Plaintiff alleges that Defendants continued the Copyright Action to obtain "the permanent termination" of Plaintiff's YouTube channel and to "intimidate, punish, shame, harass and attempt to extort millions of dollars from Plaintiff." (Doc. 31, ¶¶ 56, 58.) Putting aside Defendants' argument that this claim is preempted (Doc. 75, pp. 19–22), the Court finds that the undisputed record evidence belies Plaintiff's assertions.

Abuse of process claims have three elements: (1) that the defendant made an illegal, improper, or perverted use of process; (2) the defendant had ulterior motives or purposes in exercising such process; and (3) the plaintiff suffered damage as a result. *S & I Invs. v. Payless Flea Mkt. Inc.*, 36 So. 3d 909, 917 (Fla. 4th DCA 2010). "The plaintiff must prove that the process was used for an immediate purpose other than that for which it was designed." *Id.* (citing *Biondo v. Powers*, 805 So. 2d 67, 69 (Fla. 4th DCA 2002)). "Where the process was used to accomplish the result for which it was intended, '*regardless of an incidental or concurrent motive of spite or ulterior purpose*,' there is no abuse of process." *Id.* (quoting *Biondo*, 805 So. 2d at 69).

As the record reflects, PWM held a subjective good faith belief that Plaintiff's videos were infringing its copyrighted materials. (Docs. 75-1, ¶¶ 14–41 (Mr. Knight); 75-3, ¶¶ 5–14 (Mr. Sadaka); 75-5, ¶¶ 5–11 (Ms. Braeley).) This belief led PWM to submit Takedown Notifications to YouTube concerning Plaintiff's videos; and when those proved futile, PWM initiated the Copyright Action. (Doc. 75-3, ¶¶ 5–19.) The "goal" of

the Copyright Action "was to stop [Plaintiff] from infringing [PWM's] copyrights." (*Id.* ¶ 19.) Yet as Mr. Sadaka's Affidavit states, "After several months of litigation, it became apparent [Plaintiff] was not interested in resolving the case. . . . As such, expensive protractive litigation was anticipated." (*Id.* ¶ 22.) Based on these high anticipated costs with little to no expected return, "an economic reason was made to discontinue the litigation." (*Id.* ¶ 23.)

Against this backdrop, the Court finds no evidence to support Plaintiff's belief that Defendants' continuation of the Copyright Action constituted abuse of process. Rather, Defendants' actions were founded in a subjective good faith belief that Plaintiff's videos were infringing, which led them to both submit Takedown Notifications and litigate against Plaintiff. Thus, Plaintiff's abuse of process claim cannot survive summary judgment, and Defendants' Motion is due to be granted.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.    Defendants' Motion for Final Summary Judgment (Doc. 75) is **GRANTED**.

2.    The Clerk is **DIRECTED** to:

      a.    Enter judgment in favor of Defendants and against Plaintiff;

      b.    Terminate any other pending motions and deadlines; and

      c.    Close the file.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on March 4, 2019.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record
*Pro se* party